1
2  Todd M. Friedman (SBN 216752)
   Adrian R. Bacon (SBN 280332)
   LAW OFFICES OF TODD M. FRIEDMAN, P.C.
3  21031 Ventura Blvd., Suite 340
   Woodland Hills, CA 91364
4  Phone: 323-306-4234
   Fax: 866-633-0228
5  tfriedman@toddflaw.com
   abacon@toddflaw.com
6  Attorneys for Plaintiff

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11

12 | **FRANK BELL**, *on behalf of himself and all others similarly situated*, | Case No.: |

13 |                                      | **COMPLAINT - CLASS ACTION** |
                    *Plaintiff*,
14 |          v.                         | **JURY TRIAL DEMANDED** |

15 | **HAWX SERVICES, LLC**, |

16 |                    *Defendant*. |

17                        **INTRODUCTION**

18      1.      This action arises out of Defendant, Hawx Services,
19 LLC's ("Hawx" or "Defendant") marketing practices that violate the Telephone
20 Consumer Protection Act, 47 U.S.C.
21 § 227, *et seq*. ("TCPA").

22      2.      Hawx makes, or has made on its behalf, telemarketing calls soliciting its pest control
23 services.

24      3.      These calls are made to individuals on the National Do-Not-Call Registry.

25      4.      The TCPA prohibits making telemarketing calls to individuals who have registered
26 their telephone numbers on the National Do-Not-Call Registry.

27

28
                                    1

5.      Accordingly, Mr. Bell brings this action on behalf of himself and a class of similarly situated individuals.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

7.      This Court has jurisdiction over Hawx because Hawx conducts business transactions in this District and made calls into this District targeting residents of this District as part of the business it conducts in this District.

8.      Venue is proper in this District because Defendant targeted a resident of this District and called into this District and because some of the wrongful conduct giving rise to this case occurred in and/or was directed to this District.

## PARTIES

9.      Plaintiff Frank Bell ("Mr. Bell") is, and at all times mentioned herein was, a citizen and resident of Corning, California.

10.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

11.     Hawx is, and at all times mentioned herein was a limited liability company organized and existing under the laws of the state of Utah with a principal place of business located at 550 S Depot Drive, Suite 1, Ogden, Utah 84404.

12.     Hawx does business as Hawx Pest Control.

13.     Hawx may be served via its registered agent Matthew Mehr located at 550 S Depot Drive, Suite 1, Ogden, Utah 84404.

14.     Hawx is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

**TCPA BACKGROUND**

15.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

16.     Relevant here, the TCPA establishes a national "do not call" database of numbers not to be called.  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

17.     These regulations are codified at 47 C.F.R. §§ 64.1200(e)(1-2).[1]

18.     A company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

19.     A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

20.     A person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls.  *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations").  In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of

---

[1] Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones that are used for residential purposes. 47 CFR. § 64.1200(e).

agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

21.     Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability.  Under those circumstances, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

### FACTUAL ALLEGATIONS

22.     Mr. Bell is the user of his personal cellular telephone number (XXX)-XXX-7881.

23.     Ms. Bell's cellular telephone number (XXX)-XXX-7881 is used for residential purposes and is not associated with a business.

24.     Mr. Bell's cellular telephone number (XXX)-XXX-7881 has been on the National Do-Not-Call Registry since November 7, 2014.

25.     On December 4, 2023 at 8:10 am, Hawx, or an authorized third-party calling on Hawx's behalf, called Mr. Bell from telephone number (801) 689-3100.

26.     The caller attempted to solicit Mr. Bell to purchase pest control services.

27.     Mr. Bell has no relationship with Hawx, was not on the market for pest control services, and had not inquired about pest control services with Hawx or any other servicer or provider.

28.     Mr. Bell advised the caller that he was not interested and not to call again.

29.     Approximately one hour later, on December 4, 2023 at 9:11am, Hawx, or an authorized third-party calling on Hawx's behalf, called Mr. Bell again from telephone number (801) 689-3100.

4

30.     The caller attempted to solicit Mr. Bell again to purchase pest control services.

31.     Mr. Bell again advised the caller that he was not interested and asked why Hawx called him again after he requested not to be contacted.

32.     The representative advised that he could not control the calling because he was using an autodialer.

33.     Hawx's violations were, at a minimum, negligent.

34.     Alternatively, Hawx's violations were willful and knowing because Hawx knew that Mr. Bell's telephone number was registered on the National Do-Not-Call registry and called him anyway.

35.     Mr. Bell and the classes were damaged by the violations alleged herein. In addition to using their cellular data, storage, and battery life, they suffered an invasion of privacy, aggravation, annoyance, frustration, distraction, intrusion upon seclusion, and violations of their substantive statutory rights under the TCPA to remain free of unsolicited calls.  Their privacy was improperly invaded, the Hawx calls temporarily seized and trespassed upon the use of their phones, and/or they were forced to divert attention away from other activities, including work, family, and personal activities, to address the unwanted telephone calls.  Hawx's telephone calls were annoying and a nuisance and wasted the time of Mr. Bell and the class members. *See, e.g., Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

36.     Because Mr. Bell and Class Members received calls from, or on behalf of, Hawx, on their DNC registered numbers, it demonstrates the need for judicial intervention and injunctive relief to enjoin any continued and future harm.

///

///

///

**DEFENDANT'S LIABILITY**

37.    Hawx used automated systems to make outbound telephonic sales calls to hundreds if not thousands of consumers across the U.S., including to consumers whose phone numbers are listed on the National Do-Not Call Registry.

38.    Hawx made two or more telephone solicitations to Mr. Bell, whose number was on the National Do-Not-Call Registry at the time of the telephone calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

39.    Accordingly, for violations of 47 C.F.R. § 64.1200(c), Mr. Bell is entitled to $500 per call through 47 U.S.C. § 227(c).

40.    Mr. Bell is entitled to $1,500 per call if Hawx's actions are found to be knowing or willful.

41.    Hawx, directly, individually, jointly, and/or in concert with another, or through other persons, entities or agents acting on its behalf, conspired to, agreed to, contributed to, authorized, facilitated, assisted with, ratified, turned a blind eye to, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the unsolicited calls that are the subject matter of this Complaint.

42.    To the extent Hawx outsourced its robocalling, it is still liable for calls that violate the TCPA.

43.    Hawx is liable for third-parties' actions because it took steps to cause the calls to be made, and because the calls were made pursuant to it's actual authority, apparent authority and/or ratification, or pursuant to joint enterprise or acting in concert liability.

44.    On May 9, 2013, the FCC's Declaratory Ruling confirmed that sellers may not avoid liability by outsourcing telemarketing:

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions.  This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case.  Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief.  As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

45. *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules, 28 FCC Rcd. 6574, at ¶ 37 (2013) ("FCC 2013 Ruling"),* 28 FCC Rcd at 6588 (¶37) (internal citations omitted).

46. Moreover, the *May 2013 FCC* Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call.  *Id.* at 6587 n. 107.

## CLASS ACTION ALLEGATIONS

47. Plaintiff brings this action under Fed. R. Civ. P. 23(b)(3) on behalf of a proposed "Class," as defined as follows:

### THE DNC CLASS

Plaintiff and all persons within the United States to whose telephone number Defendant placed (or had placed on its behalf) two or more telemarketing calls in a 12-month period when the telephone number to which the telephone calls were made was on the National Do-Not-Call Registry for more than 30 days at the time of the calls from four (4) years prior to the filing of the Complaint.

(the "DNC Class")

48. Excluded from the Class are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom

this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

49.     The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

50.     The Defendant's records will reveal the precise number of class members.

51.     The exact number and identities of the persons who fit within the Class are ascertainable in that Defendant and third parties maintain written and electronically stored data showing:

a.   The time period(s) during which Defendant or its agent(s) made the telephone calls;

b.   The telephone numbers to which Defendant or its agent(s) made telephone calls;

c.   The telephone numbers for which Defendant had prior express written consent;

d.   The purposes of such telephone calls; and

e.   The names and addresses of Class members.

52.     The Class is comprised of hundreds, if not thousands, of individuals.

53.     There are common questions of law and fact affecting the rights of the Members of the Class, including, *inter alia*, the following:

a.   Whether Defendant (or someone acting on its behalf) makes telemarketing calls;

b.   Whether Defendant (or someone acting on its behalf) obtains prior express written consent;

c.   Whether Defendant or the entities with which it contracts make solicitation calls and to telephone numbers registered on the National Do-Not-Call Registry;

d.   Whether Defendant had "prior express consent" under the TCPA to call the cell phone numbers of Plaintiff and Class Members;

e.   Whether Defendant's statutory violations were willful and knowing; and

8

f.   Whether Defendant should be enjoined from engaging in such conduct in the future.

54.   Plaintiff is a member of the Class in that Defendant placed two or more calls for telemarketing purposes, in a one-year period to his telephone number, without his prior express written consent, while his telephone number was on the National Do-Not-Call Registry.

55.   Plaintiff's claims are typical of the claims of the Members of the Class in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

56.   Plaintiff and all putative Members of the Class have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Defendant's unwanted calls and suffered a nuisance and an invasion of their privacy.

57.   Plaintiff has no interests antagonistic to, or in conflict with, the Class.

58.   Plaintiff is an adequate representative of the Class and will thoroughly and adequately protect the interests of the Class, having retained qualified and competent legal counsel to represent him and the Class.  Plaintiff is prepared to participate in discovery and depositions and otherwise fulfill his obligations as a class representative.

59.   Defendant has acted and refused to act on grounds generally applicable to the Class, thereby making injunctive and declaratory relief appropriate for the Class.

60.   The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

61.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

62.   Common questions will predominate, and there will be no unusual manageability issues.

///

**CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On Behalf of Plaintiff and the DNC Class)**

63.     Defendant made, or had made on its behalf, telephone solicitations to Plaintiff's and putative Class Members' telephone numbers as set forth above.

64.     Plaintiff's and putative Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the calls.

65.     Plaintiff and putative Class Members each received two or more such calls in a 12-month period.

66.     Plaintiff and putative Class Members are entitled to an award of $500 in statutory damages for each telephone solicitation call pursuant to 47 U.S.C. § 227(c)(5).

67.     Plaintiff and putative Class Members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant as set forth in the Prayer for Relief below.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.     An order certifying the Class as defined above, appointing Plaintiff as the representative of the Class and appointing his counsel as Class Counsel;

B.     An order declaring that Defendant's actions, as set out above, violate the statutes referenced herein;

C.       An award of injunctive and other equitable relief as necessary to protect the

interests of the Class, including, *inter alia*, an order prohibiting Defendant from engaging in the

wrongful and unlawful acts described herein;

D.       An award of statutory damages;

E.       An award of treble damages; and

F.       Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: March 18, 2024                    Respectfully Submitted,

*/s/ Todd M. Friedman, Esq.*
Todd M. Friedman
Law Offices of Todd M. Friedman
One of Plaintiff's Attorneys

/s/ Max S. Morgan, Esquire*
Max S. Morgan
THE WEITZ FIRM, LLC
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com
(*pro hac vice application forthcoming)