1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   FRANK BELL,                              No. 2:24-cv-00825-DC-DMC

12              Plaintiff,                     ORDER GRANTING IN PART
                                              DEFENDANT'S MOTION TO DISMISS
13        v.                                   WITH LEAVE TO AMEND

14   HAWX SERVICES, LLC                        (Doc. No. 15)

15              Defendant.

16

17        This matter is before the court on Defendant Hawx Services, LLC's motion to dismiss

18   Plaintiff Frank Bell's first amended complaint under Federal Rule of Civil Procedure 12(b)(6) or,

19   alternatively, to strike certain allegations under Federal Rules of Civil Procedure 12(f) and 23.

20   (Doc. No. 15.) The pending motion was taken under submission to be decided on the papers

21   pursuant to Local Rule 230(g). (Doc. No. 23.) For the reasons discussed below, the court will

22   grant, in part, Defendant's motion to dismiss with leave to amend.

23                                     **BACKGROUND**

24        In his operative first amended complaint ("FAC"), Plaintiff alleges that on November 7,

25   2014, he registered his cell phone number on the National Do Not Call ("DNC") registry. (Doc.

26   No. 11 at ¶ 26.) According to Plaintiff, his cell phone number is not associated with a business.

27   (*Id*. at ¶ 23.) Instead, Plaintiff states his cell phone number is used for residential purposes,

28   namely, to communicate with friends and family. (*Id*. at ¶¶ 23–24.)

                                            1

On December 4, 2023, at 8:10 a.m., Plaintiff received a call from the telephone number (801) 689-3100. (*Id*. at ¶ 28.) When Plaintiff answered, the caller stated that he was with Defendant and attempted to solicit Plaintiff "to purchase Hawx's pest control services." (*Id*. at ¶¶ 30, 32.) Plaintiff advised the caller that he was not interested in Defendant's services and not to call again. (*Id*. at ¶ 34.)

Approximately one hour later, on December 4, 2023, at 9:11 a.m., Defendant called Plaintiff from the same telephone number. (*Id*. at ¶ 35.) When Plaintiff answered, the caller again attempted to solicit Plaintiff "to purchase pest control services." (*Id*. at ¶ 36.) Plaintiff again advised the caller that he was not interested and asked why Defendant had called him after he had requested not to be contacted. (*Id*. at ¶ 37.) In response, the caller advised Plaintiff that he could not control the calling because he was using an autodialer. (*Id*. at ¶ 38.) Plaintiff alleges he is at risk of receiving future calls from Defendant because Defendant uses an automated dialing system, and it does not "scrub" its call/lead lists against the DNC registry before making calls. (*Id*. at ¶¶ 46, 49.)

Based on these allegations, on June 19, 2024, Plaintiff filed the FAC bringing a single claim on behalf of himself and a putative class against Defendant for violating 47 U.S.C. § 227(c)(5) of the Telephone Consumer Protection Act ("TCPA").[1] (Doc. No. 11.) In his FAC, Plaintiff asks, among other things, for injunctive relief to enjoin Defendant from causing "any continued and future harm" to him and the putative class. (*Id*. at 9, 11, 13.) On July 17, 2024, Defendant filed the pending motion to dismiss or, in the alternative, to strike Plaintiff's FAC. (Doc. No. 15.) On July 31, 2024, Plaintiff filed an opposition to that motion. (Doc. No. 17.) On August 12, 2024, Defendants filed a reply to Plaintiff's opposition. (Doc. No. 18.)

/////

---

[1] Plaintiff filed his original complaint on March 18, 2024. (Doc. No. 1.) On June 10, 2024, Defendant filed a motion to dismiss Plaintiff's original complaint. (Doc. No. 9.) The court did not substantively address Defendant's motion, however, because Plaintiff timely filed his first amended class action complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15. (Doc. No. 11.) Thus, on June 24, 2024, the court denied Plaintiff's motion to dismiss as having been rendered moot by Plaintiff's filing of the operative first amended complaint. (Doc. No. 12.)

1                                  **LEGAL STANDARDS**

2   **A.**      **Rule 12(b)(6) Standard**

3        A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asks a court to

4 dismiss a plaintiff's complaint for failure to state a claim upon which relief can be granted.

5 *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A claim may be dismissed for lack of a

6 cognizable legal theory or the absence of sufficient facts to support a cognizable legal theory.

7 *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean*

8 *Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir. 1984)).

9        "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

10 accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

11 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also*

12 Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the claim showing

13 that the pleader is entitled to relief). A complaint satisfies the plausibility requirement if it

14 contains sufficient facts for the court to "draw [a] reasonable inference that the defendant is liable

15 for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). For

16 purposes of a motion to dismiss, "[a]ll allegations of material fact are taken as [*338] true and

17 construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80

18 F.3d 336, 337–38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1137, 1340 (9th

19 Cir. 1995)).  If a court dismisses certain claims, "[l]eave to amend should be granted unless the

20 district court 'determines that the pleading could not possibly be cured by the allegation of other

21 facts.'" *Knappenberger v. City of Phx.*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v.*

22 *Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)).

23   **B.**      **Rule 12(b)(1) Standard**

24        Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a claim

25 based on a lack of subject matter jurisdiction. There are two types of motions to dismiss for lack

26 of subject matter jurisdiction: a factual attack and a facial attack. *Safe Air for Everyone v. Meyer*,

27 373 F.3d 1035, 1039 (9th Cir. 2004). A factual attack challenges "the truth of the allegations that,

28 by themselves, would otherwise invoke federal jurisdiction." *Id*. Where, as here, when a motion

1    to dismiss constitutes a facial attack, "the motion to dismiss is granted only if the nonmoving

2    party fails to allege an element necessary for subject matter jurisdiction." *Costamagna v.*

3    *McKesson Corp.*, No. 23-cv-01008-MCE-DB, 2024 WL 871290, at *2 (E.D. Cal. Feb. 29, 2024)

4    (citing *Savage v. Glendale High Union Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.1 (9th Cir.

5    2003)).

6         "Standing is a threshold matter central to [the court's] subject matter jurisdiction." *Bates*

7    *v. United Parcel Servs. Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). When a 12(b)(1) motion to

8    dismiss for lack of subject matter jurisdiction is based on a lack of standing, the court must defer

9    to the plaintiff's factual allegations and must "presume[] that general allegations embrace those

10   specific facts that are necessary to support the claim." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S.

11   871, 889 (1990). To show standing at the pleading stage, general factual allegations as they exist

12   at the time the complaint was filed may suffice. *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

13   560–61 (1992). Further, "a plaintiff must demonstrate standing separately for each form of relief

14   sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)

15   (citations omitted). The party invoking federal subject matter jurisdiction has the burden of

16   establishing standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), as revised (May 24,

17   2016).

18                                      **ANALYSIS**

19        In its motion, Defendant contends Plaintiff's FAC should be dismissed because he fails to

20   state a cognizable TCPA claim and fails to plead standing for injunctive relief. (Doc. No. 15 at 9–

21   10, 13–15.) The court addresses each contention in turn.[2]

22   **A.    Plaintiff's TCPA Claim**

23        In 1991, Congress enacted the TCPA "to protect consumers from the unwanted intrusion

24   and nuisance of unsolicited telemarketing phone calls and fax advertisements." *Van Patten v.*

25   *Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (citing the Telephone Consumer

26

27   _____

     [2] Because the court concludes dismissal of Plaintiff's FAC with leave to amend is appropriate, the
28   court will not address Defendant's alternative request to strike certain allegations contained in the
     FAC.

                                             4

1  Protection Act of 1991, Pub. L. 102–243, § 2, ¶ 12, 105 Stat. 2394 (1991)); *see also McLaughlin*

2  *Chiropractic Assocs. Inc. v. McKesson Corp.*, 606 U.S. 146, 149 (2025) ("The TCPA protects

3  businesses and consumers from intrusive telemarketing communications."). "Section 227(c) of

4  the TCPA directs the Federal Communications Commission (FCC) to promulgate regulations 'to

5  implement methods and procedures for protecting the privacy rights' of 'residential telephone

6  subscribers.'"[3] *Lyman v. Quinstreet, Inc.*, No. 23-cv-05056-PCP, 2024 WL 3406992, at *2 (N.D.

7  Cal. Jul. 12, 2024) (quoting 47 U.S.C. § 227(c)(1)–(2)). Further, "[t]he TCPA gives consumers

8  who ha[ve] received more than one telephone call within any 12-month period by or on behalf of

9  the same entity in violation of the[se] regulations a private right of action." *Jones v. Royal Admin.*

10  *Servs.*, 887 F.3d 443, 446 (9th Cir. 2018) (citing 47 U.S.C. § 227(c)(5)).

11       In 2003, in response to § 227(c)'s directive, the FCC created the DNC registry, which

12  allows a consumer to opt out of receiving marketing calls by prohibiting "a person or entity" from

13  "initiat[ing] any telephone solicitation to . . . [a] residential telephone subscriber who has

14  registered his or her telephone number on the national do-not-call registry." 47 C.F.R.

15  § 64.1200(c)(2). A solicitation is defined as "the initiation of a telephone call or message for the

16  purpose of encouraging the purchase or rental of, or investment in, property, goods, or services,

17  which is transmitted to any person." 47 C.F.R. § 64.1200(f)(15). Thus, to state a claim under 47

18  U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2), a plaintiff must allege: (1) he is a residential

19  telephone subscriber with a number that is registered on the DNC registry, (2) that he received

20  more than one telephonic solicitation, (3) on or behalf of the same entity, (4) during a twelve-

21  month period. *Greene v. Select Funding, LLC*, No. 20-cv-07333-RGK-KS, 2021 WL 4926495, at

22  *5 (C.D. Cal. Feb. 5, 2021); *Andersen v. Nexa Mortg., LLC.*, No. 24-cv-00619-DOC-ASD, 2024

23  WL 3762098, at *2 (C.D. Cal. Aug. 12, 2024).

24       In its motion, Defendant argues Plaintiff's allegations that a caller attempted to solicit him

25  "to purchase Hawx's pest control services" (Doc. No. 11 at ¶ 32), is insufficient because he

26  _____

27  [3] In *Chennette v. Porch.com, Inc.*, 50 F.4th 1217 (9th Cir. 2022), the Ninth Circuit held that
cellular phones used for both personal and business purposes were presumptively residential for
the purposes of § 227(c). *Id.* at 1224–26. Thus, Plaintiff's cellphone constitutes a residential

28  telephone.

1  "alleges virtually no content of the alleged violative calls in his FAC, such that this [c]ourt could

2  reasonably determine whether they were actually 'telephone solicitations' as required by the

3  TCPA." (Doc. No. 15 at 14.) To support its argument, Defendant relies on the decision in *Gulden*

4  *v. Consol. World Travel Inc.*, No. 16-cv-01113-DJH, 2017 WL 3841491 (D. Ariz. Feb. 15, 2017).

5  (*Id*. at 14.) There, the plaintiff alleged that from approximately December 4, 2015, to January 31,

6  2016, the defendant called his residential phone four times "for the purpose of soliciting for its

7  products and services," even though the plaintiff's telephone number was registered on the DNC

8  registry. *Gulden*, 2017 WL 3841491, at *1. The court found the plaintiff's allegations insufficient

9  to state a cognizable TCPA claim because he did "not describe the calls" and his allegation was

10  "nothing more than a conclusion, which *Twombly* specifically prohibits." *Id*. at *3 (citing

11  *Twombly*, 550 U.S. at 555). The court concluded that without further factual enhancement, the

12  plaintiff's allegation that the calls were unsolicited advertisements was insufficient for his TCPA

13  claim to survive a motion to dismiss. *Id*.

14         Like *Gulden*, the court finds Plaintiff has not sufficiently pled that he received a telephone

15  solicitation within the meaning of the TCPA. Although Plaintiff argues in his opposition that he

16  has sufficiently pled facts to allege that telephone solicitations in violation of the TCPA occurred

17  (Doc. No. 17 at 12, 15), Plaintiff provides no details in his FAC regarding the content of the two

18  calls he received on December 4, 2023. Instead, Plaintiff simply alleges that Defendant

19  "attempted to solicit [Plaintiff] to purchase Hawx's pest control services." (Doc. No. at 11 ¶¶ 32,

20  36.) While Plaintiff is not required to provide a line-by-line transcript of the telephone calls in

21  question, he is still required to provide more than a conclusory statement that Defendant

22  attempted to solicit him. *See Eggleston v. Reward Zone USA LLC*, No. 20-cv-01027-SVW-KS,

23  2022 WL 886094, at *6–7 (C.D. Cal. Jan. 28, 2022) (finding plaintiff's reliance on conclusory

24  labels such as advertisement and promotion, without any supporting factual detail, was

25  insufficient to state a plausible claim that defendant's messages constituted telephone solicitations

26  under *Iqbal*.)

27         Accordingly, because Plaintiff has not sufficiently alleged that the two calls he received

28  were telephone solicitations under TCPA, the court will grant Defendant's motion to dismiss

1    Plaintiff's TCPA claim.

2    **B.    Injunctive Relief**

3    The court next turns to Plaintiff's request for injunctive relief. "The TCPA permits a

4    plaintiff to bring 'an action based on a violation of [§ 227] or the regulations prescribed under

5    th[e statute] to enjoin such violation[.]'" *Blair v. Assur. IQ LLC*, No. 23-cv-00016-KKE, 2023

6    WL 6622415, at *4 (W.D. Wash. Oct. 11, 2023) (quoting 47 U.S.C. § 227(b)(3)(A)). Injunctive

7    relief requires that the threat of injury be "actual and imminent," or "certainly impending," and

8    "not conjectural or hypothetical." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir.

9    2018) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *Clapper v. Amnesty Int'l*

10    *USA*, 568 U.S. 389, 409 (2013)). "Allegations of possible future injury do not satisfy the

11    requirements of [Article] III." *Whitmore v. Arkansas*, 459 U.S. 149, 158 (1990). When standing is

12    "premised entirely on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood

13    that he will again be wronged in a similar way.'" *Davidson*, 889 F.3d at 967 (citing *City of Los*

14    *Angeles v. Lyons*, 561 U.S 95, 111 (1983)).

15    In its motion, Defendant contends Plaintiff lacks Article III standing to seek injunctive

16    relief because he has not pled plausible facts suggesting an imminent possible future injury to

17    himself. (Doc. No. 15 at 9, 15.) Specifically, Defendant contends Plaintiff's request for injunctive

18    relief must be dismissed because he has "not allege[d] receiving a single additional call from

19    [Defendant] since December 4, 2023." (Doc. No. 18 at 12.)

20    Defendant is correct that "[t]he timing and number of calls" on December 4, 2023, alone,

21    do not show a "sufficient likelihood that [Plaintiff] will again be wronged in a similar way."

22    *Brown v. Nano Hearing Tech Opco, LLC*, No. 24-cv-00221-BTM-JLB, 2024 WL 3367536, at *8

23    (S.D. Cal. Jul. 9, 2024) (quoting *Lyons*, 461 U.S. at 111). However, Plaintiff does not solely rely

24    on the December 4, 2023 calls to allege standing. *Cf. Brown*, 2024 WL 3367536, at *8 ("The

25    Complaint does not allege any facts regarding potential future calls."); *Blair*, 2023 WL 6622415,

26    at *5 (dismissing plaintiff's claim for injunctive relief because "he [did] not even mention the

27    possibility of future calls"). Instead, Plaintiff contends he has sufficiently alleged a risk of future

28    harm that Defendant may call him again, "due to Defendant's scrubbing policies (which appear

1    nonexistent) and usage of automated dialing systems it cannot control." (Doc. No. 17 at 20.)

2          In support of his contention, Plaintiff relies on the decision in *Campbell v. Facebook, Inc.*,

3    951 F.3d 1106 (9th Cir. 2020), which the court finds persuasive. (*Id*. at 20–21.) In *Campbell*, the

4    Ninth Circuit upheld a settlement agreement in a class action alleging that Facebook had

5    captured, read, and used website links in its users' private messages without their consent where a

6    "combination of continuing harm plus likelihood of future harm was sufficient for Plaintiffs to

7    have standing to seek injunctive relief." 951 F.3d at 1119. The court found that the plaintiffs had

8    shown there was a risk of future harm because the defendant never claimed to have ceased the

9    challenged conduct, and the defendant's "ongoing retention of the data collected from private

10   messages meant that there was a risk that it would resume using the [plaintiffs'] data." *Id*. Like

11   *Campbell*, there is no indication that Defendant has ceased the challenged conduct, and Defendant

12   has made no representation that they have taken any action to prevent that challenged conduct,

13   such as deleting Plaintiff's phone number from its records. *See Rogers v. Assur. IQ, LLC*, No. 21-

14   cv-00823-TL, 2023 WL 2646468, at *8 (W.D. Wash. Mar. 27, 2023) (denying defendants'

15   motion to dismiss plaintiffs' request for injunctive relief because defendants' retention of the

16   plaintiffs' phone numbers could cause future harm); *Cf. Miller v. Time Warner Cable, Inc.*, No.

17   16-cv-00329-AS, 2016 WL 7471302, at *4 (9th Cir. Dec. 27, 2016) (finding the plaintiff lacked

18   standing to request injunctive relief under the TCPA where the defendant presented evidence it

19   had received and respected plaintiff's DNC request).[4] Because Defendant still purportedly retains

20   Plaintiff's phone number (Doc. No. 11 at ¶¶ 46, 49), Plaintiff has adequately alleged that there is

21   a sufficient likelihood that Defendant could call him again.

22          Accordingly, the court will deny Defendant's motion to dismiss Plaintiff's request for

23   injunctive relief as a remedy for his TCPA claim.

24   **C.    Leave to Amend**

25          Defendant contends that Plaintiff's FAC should be dismissed without leave to amend

26   because he already had an opportunity to amend his original complaint, and his FAC still contains

27   _____

28   [4] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1 the same fatal defects as the original complaint. (Doc. No. 15 at 16.) Defendant asserts

2 amendment is futile because "[i]f Plaintiff had any more actual facts he could allege to bring his

3 pleading into compliance with federal pleadings standards . . . he could (and indeed should) have

4 pled them by now." (*Id.*)

5         Rule 15(a)(2) of the Federal Rule of Civil Procedure provides that "leave [to amend] shall

6 be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). However, district courts are

7 only required to grant leave to amend if a complaint can be saved. *Lopez v.*, 203 F.3d at 1129.

8 Here, although Plaintiff has already amended his complaint, the court is not convinced that his

9 TCPA claim cannot possibly be cured by pleading additional facts. *Watison v. Carter*, 668 F.3d

10 1108, 1117 (9th Cir. 2012); *see Rahimian v. Adriano*, No. 20-cv-02189-GMN-VCF, 2022 WL

11 798371, at *6 (D. Nev. Mar. 16, 2022) (granting plaintiff leave to amend his TCPA claims

12 because plaintiff may be able to plead additional facts to cure those claims). Therefore, the court

13 will grant Plaintiff leave to amend his complaint.

14 **CONCLUSION**

15         For the reasons explained above:

16     1.     Defendant's motion to dismiss (Doc. No. 15) is GRANTED, in part, as stated

17            herein;

18     2.     Plaintiff's first amended complaint (Doc. No. 11) is DISMISSED with leave to

19            amend;

20     3.     Within fourteen (14) days from the date of entry of this order, Plaintiff shall file a

21            second amended complaint, or alternatively, a notice of his intent to not file a

22            second amended complaint; and

23 /////

24 /////

25 /////

26 /////

27 /////

28 /////

9

1       4.      Plaintiff is cautioned that his failure to comply with this order may result in

2               dismissal of this action due to Plaintiff's failure to prosecute and comply with a

3               court order.

4

5       IT IS SO ORDERED.

6   Dated:   **September 2, 2025**

                                                    _____
7                                                   Dena Coggins
                                                    United States District Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28